In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 18-3582 & 19-1557

JENNIFER R. LARKIN
and DOREAN A. SANDRI,

*Plaintiffs-Appellants,*

*v.*

FINANCE SYSTEM OF GREEN BAY, INC.,

*Defendant-Appellee.*

Appeals from the United States District Court
for the Eastern District of Wisconsin.
Nos. 18-C-496 & 18-C-1208 — **William C. Griesbach**, *Judge.*

ARGUED MARCH 30, 2020 — DECIDED DECEMBER 14, 2020

Before SYKES, *Chief Judge*, and EASTERBROOK and ROVNER, *Circuit Judges.*

SYKES, *Chief Judge*. These consolidated appeals involve materially identical claims under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* Jennifer Larkin and Dorean Sandri received collection letters from Finance System of Green Bay, Inc., seeking payment of medical

debts. Represented by the same law firm, Larkin and Sandri filed separate class-action lawsuits claiming that the letters violated §§ 1692e and 1692f of the Act, which prohibit the use of false, deceptive, or misleading representations, or otherwise unfair or unconscionable methods to collect a debt. The district court dismissed both complaints for failure to state a claim.

We affirm, but on different grounds. A threshold question concerns standing to sue. Larkin and Sandri accuse Finance System of violating §§ 1692e and 1692f, but they have not alleged any injury from the statutory violations. Under *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), and *Casillas v. Madison Avenue Associates, Inc.*, 926 F.3d 329 (7th Cir. 2019), both cases should have been dismissed for lack of standing.

## I. Background

Jennifer Larkin incurred a debt to Green Bay Radiology SC, which hired Finance System to collect it. On March 28, 2017, Finance System sent a standard dunning letter to Larkin. Along with information about the debt, the letter stated: "You want to be worthy of the faith put in you by your creditor … . We are interested in you preserving a good credit rating with the above creditor."

A year later Larkin sued Finance System alleging that these sentences are false, deceptive, or misleading in violation of § 1692e of the Fair Debt Collection Practices Act ("FDCPA" or "the Act"). She also generally alleged that the statements amount to an unfair or unconscionable means of collecting a debt in violation of § 1692f. Larkin proposed to

represent a class of persons who received similar dunning letters from Finance System.

Dorean Sandri also incurred a debt to Green Bay Radiology. In August and September 2017, Finance System sent her three collection letters much like the one Larkin received. The first was dated August 6 and said, "Your creditor is interested in you preserving a good credit rating with them." The second, dated August 22, said, "You do not want to lose our confidence. You want to be worthy of the faith put in you by your creditor … ." The third, sent on September 7, told Sandri that "[y]our creditor has placed your bill for collection. To avoid errors and to clear your credit record with the above creditor, send or bring your payment to our office, or pay online … ."

Represented by the same law firm as Larkin, Sandri filed a nearly identical class-action lawsuit claiming that these statements are false, deceptive, or misleading, or otherwise unfair or unconscionable, in violation of §§ 1692e and 1692f.

The cases were assigned to the same district judge but not consolidated. In Larkin's case Finance System moved to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that the complaint was both untimely and failed to state a claim. The judge ordered supplemental briefing on the question of Larkin's standing to sue. Finance System responded that Larkin lacks standing, then moved to dismiss Sandri's case as well based on lack of standing and failure to state a claim.

Addressing the dismissal motion in Larkin's case first, the judge concluded that Larkin has standing and had timely filed suit. But he dismissed her complaint for failure to state

a claim, holding as a matter of law that the statements we've quoted above do not violate §§ 1692e or 1692f. The judge reached the same conclusions in Sandri's case and dismissed her complaint for failure to state a claim.

Larkin and Sandri appealed. We consolidated the cases because they present identical questions of law.

## II. Discussion

We begin—and end—with a discussion of standing. Article III of the Constitution empowers the federal judiciary to decide "Cases" and "Controversies," U.S. CONST. art. III, § 2, a limitation long understood to confine the federal courts to concrete disputes presented in a form historically recognized as appropriate for judicial resolution in the Anglo-American legal tradition, *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006). The doctrine of standing enforces this Article III limitation. To invoke the jurisdiction of a federal court, a plaintiff must demonstrate that he has standing to sue, a requirement "rooted in the traditional understanding of a case or controversy." *Spokeo*, 136 S. Ct. at 1547.

To establish standing, a plaintiff has the burden to establish that he has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial ruling." *Id.* At the pleading stage, the standing inquiry asks whether the complaint "clearly … allege[s] facts demonstrating each element" in the doctrinal test. *Id.* (quotation marks omitted).

Many disputes about standing turn on the "injury in fact" requirement, and these two cases fall within that

category. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). The key question here is whether Larkin and Sandri have alleged an injury that is "both concrete *and* particularized." *Id.*

Particularization is generally easy to understand. An injury is particularized if it "affect[s] the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1. The claimed injury cannot be a generalized grievance shared by all members of the public. *DaimlerChrysler Corp.*, 547 U.S. at 342–44. Rather, the plaintiff *himself* must have *personally* suffered an actual injury or an imminent threat of injury. *Id.*; *see also Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1619 (2020) (affirming a dismissal for lack of standing because the plaintiffs *themselves* had no stake in the lawsuit).

The concreteness requirement can be trickier. "A concrete injury must be *de facto*; that is, it must actually exist." *Spokeo*, 136 S. Ct. at 1548 (quotation marks omitted). Put slightly differently, a concrete injury is one that is "real, … not abstract." *Id.* (quotation marks omitted). But "concrete" does not necessarily mean "tangible." Both tangible and intangible harms can satisfy the concreteness requirement, although tangible injuries—e.g., physical harms and monetary losses—are "easier to recognize." *Id.* at 1549.

Intangible harms raise more difficult injury-in-fact questions. In the context of suits seeking relief for statutory violations, "both history and the judgment of Congress play important roles" in the analysis. *Id.* Congress may identify

and elevate historically non-cognizable intangible harms to the status of cognizable injuries, and when it does so, "its judgment is … instructive and important." *Id.* But it's not conclusive. To the contrary, as the Supreme Court emphasized in *Spokeo*, a congressional decision to create a cause of action "does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* Because Congress cannot override the case-or-controversy requirement, "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* So, for example, when a plaintiff sues for "a bare procedural violation" of a statute and has not alleged a concrete personal injury from the violation, he has not satisfied the injury-in-fact requirement of Article III. *Id.*

Two of our recent cases applied the teaching of *Spokeo* to lawsuits arising under the FDCPA. *Casillas v. Madison Avenue Associates* concerned an alleged violation of § 1692g, which requires debt collectors to provide consumers with written notice of certain statutory rights—notably, the right to dispute the debt and the right to demand that the debt collector verify the identity of the creditor. 926 F.3d at 332. The defendant debt collector in that case made the required statutory disclosures in its communications with Paula Casillas but failed to inform her that if she wished to exercise her right to dispute the debt or demand verification of the creditor's identity, she had to do so "in writing" as § 1692g(a)(4) requires. *Id.*

Casillas sued the debt collector for violating § 1692g(a) based on the failure to include the required "in writing"

notice. But she did not allege any injury other than "the receipt of an incomplete letter"—i.e., a letter that failed to tell her of the "in writing" requirement if she wished to dispute the debt or seek verification of the creditor's identity. *Id.* at 331–32. Casillas did not claim that this incomplete letter harmed her in any way. "She did not allege that she tried—or even planned to try—to dispute the debt or verify [the identity of] … her creditor." *Id.* at 332. In short, "her notice was missing some information that she did not suggest that she would ever have used." *Id.* at 334. This meant that "[a]ny risk of harm was entirely counterfactual: she was not at any risk of losing her statutory rights because there was no prospect that she would have tried to exercise them." *Id.* Applying *Spokeo*, we concluded that because Casillas alleged "a bare procedural violation" without any allegation of a concrete harm, she lacked standing to sue. *Id.* at 339.

*Lavallee v. Med-1 Solutions*, 932 F.3d 1049 (7th Cir. 2019), also concerned an alleged violation of § 1692g, but the standing inquiry yielded a different result. Unlike *Casillas*, which involved an "*incomplete* validation notice," in *Lavallee* the debt collector did not provide "*any* of the disclosures required by § 1692g(a)." *Id.* at 1053. And crucially, the plaintiff, Beth Lavallee, suffered an actual harm from the statutory violation: the debt collector had already sued her in state court to collect the debt. That collection action would have been frozen in its tracks if she had disputed the debt or demanded verification as provided in the FDCPA. Under these circumstances, we found it reasonable to infer that if the debt collector had complied with its FDCPA notice obligations, Lavallee "would have exercised her statutory rights [to dispute the debt and demand verification], thereby

halting the collection litigation." *Id.* That was enough to establish a concrete injury:

> In light of *Casillas*, an FDCPA plaintiff should include an allegation of concrete harm in his complaint. A bare allegation that the defendant violated one of the Act's procedural require-ments typically won't satisfy the injury-in-fact requirement. But in Lavallee's circumstances, the complete deprivation of § 1692g(a) disclo-sures and the fact that she was sued without the benefit of mandatory § 1692g(a) disclosures lends concreteness to her injury.

*Id.*

With *Casillas* and *Lavallee* in mind, we return to our cases. *Casillas* and *Lavallee* raised claims under § 1692g, which imposes procedural obligations on debt collectors to notify consumers of certain statutory rights when communicating with them. Larkin and Sandri, on the other hand, raise claims under §§ 1692e and 1692f, which prohibit "false, deceptive, or misleading representations" and "unfair or unconscionable" practices in the collection of consumer debts. In other words, the plaintiffs here invoke the Act's substantive provisions. Their attorney pointed to this procedural/substantive distinction at oral argument as a basis to distinguish *Casillas*. We're not persuaded that the distinction makes *Casillas* inapplicable or alters the Article III calculus. An FDCPA plaintiff must allege a concrete injury regardless of whether the alleged statutory violation is characterized as procedural or substantive. *Thole*, 140 S. Ct. at 1621 (concluding that "the plaintiffs have failed to plausi-

bly allege a concrete injury" in a case raising a substantive ERISA violation).

Neither Larkin nor Sandri has done so here. As *Casillas* explains, it's not enough for an FDCPA plaintiff to simply allege a statutory violation; he must allege (and later establish) that the statutory violation harmed him "or 'presented an appreciable risk of harm to the underlying concrete interest that Congress sought to protect.'" *Casillas*, 926 F.3d at 333 (quoting *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 887 (7th Cir. 2017)). Larkin and Sandri generally alleged in their complaints that certain statements in Finance System's collection letters were false, deceptive, or misleading, or unfair and unconscionable, in violation of §§ 1692e and 1692f. But neither complaint contains *any* allegation of harm—or even an appreciable risk of harm—from the claimed statutory violation.

Nothing in the plaintiffs' appellate briefing filled the gap. Although the question of standing was litigated in the district court and raised again by Finance System in its brief on appeal, the plaintiffs' reply brief relied exclusively on the assertion of a statutory violation and made no effort to articulate an injury of any kind, either tangible or intangible, from the violation.[1]

---

[1] The plaintiffs did not address standing at all in their opening brief. Moreover, in their reply brief, they primarily argued that Finance System "waived appellate review" of its standing challenge by failing to file a cross-appeal. That argument is frivolous. Article III standing is jurisdictional and cannot be waived. *Freedom from Religion Found., Inc. v. Nicholson*, 536 F.3d 730, 737 (7th Cir. 2008).

Not finding an allegation of injury in the complaints or briefing, we gave the plaintiffs' attorney several opportunities at oral argument to identify a concrete injury that might support his clients' standing to sue. He could not do so. He did not contend, for example, that Finance System's communications caused the plaintiffs to pay debts they did not owe or created an appreciable risk that they might do so. He did not claim that his clients were confused or misled to their detriment by the statements in the dunning letters, or otherwise relied to their detriment on the contents of the letters. He did not suggest that it was reasonable to infer that Larkin and Sandri would have pursued a different course of action were it not for the statutory violations (as was the case in *Lavallee*). He *did* raise the possibility that the statements in the dunning letters might interfere with the doctor-patient relationship because the creditor in question was a medical provider. That's too abstract and conjectural to constitute an injury in fact. The radiology clinic already knew that Larkin and Sandri hadn't paid their bills; that's why the clinic hired a debt collector. There is no allegation that the collection letters deterred Larkin or Sandri from seeking medical care or that any provider would refuse to treat them.

In sum, the plaintiffs seek to invoke the power of the federal courts to litigate an alleged FDCPA violation that did not injure them in any concrete way, tangible or intangible. As explained in *Spokeo* and *Casillas*, that's impermissible under Article III. The suits should have been dismissed for lack of standing. We therefore modify the judgments to reflect a jurisdictional dismissal. As modified, the judgments are

AFFIRMED