**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued March 1, 2022
Decided May 20, 2022

**Before**

MICHAEL S. KANNE, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

THOMAS L. KIRSCH II, *Circuit Judge*

No. 21-1584

| | |
|---|---|
| UNENSAIKHAN CHULUUNBAT, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 20 C 2697 |
| WELTMAN, WEINBERG & REIS CO., LPA, *Defendant-Appellee*. | Robert W. Gettleman, *Judge*. |

**O R D E R**

Unensaikhan Chuluunbat is trying to pursue a class action against the firm of Weltman, Weinberg & Reis, a debt collector, which allegedly sent misleading letters to him and others similarly situated. The district court dismissed the action for failure adequately to assert an actual injury. But we think the court acted too quickly. Chuluunbat's complaint alleged that the debt collector sent him a misleading letter that induced him to forgo settling and instead to allow interest on his debt to accrue at a high rate. This was enough. At that early stage, he was not required also to allege that he could have paid the debt or that he did pay other debts instead of this one. And although the debt collector raised a factual dispute about Chuluunbat's solvency based

on statements he made in other litigation (on the theory that he lacks standing to sue if he was unable to pay), the district court should have resolved that dispute with an evidentiary hearing. We therefore vacate and remand for further proceedings.

**I**

After Chuluunbat defaulted on a credit card debt to Discover Bank, Discover hired Weltman, Weinberg & Reis ("Weltman") for collection services. Weltman sued in the Circuit Court of Cook County on behalf of Discover, which retained ownership of the debt. The complaint included a Weltman reference number and stated that the debt was incurred on a credit card number ending in 1116. After a trial, in which Chuluunbat participated, judgment was entered against Chuluunbat for $3,607.02 plus $366.63 in costs. The judgment did not mention interest, which accrues at a rate of nine percent per year by statute. See 735 ILCS 5/2-1303(a).

Weltman attempted to satisfy the judgment through Chuluunbat's employer and another of his banks but was unsuccessful. Weltman then sent Chuluunbat a letter on January 16, 2020. The letter indicated that it related to the 1116 credit card account, and it used the same Weltman reference number that appeared in the Cook County case. The letter did not, however, mention the judgment or interest. Instead, it stated that an "account" had a "balance due" of $4,212.90. It offered to settle the debt for 40 cents on the dollar if Chuluunbat paid before April 30, 2020, in which case the "balance due" would be $1,685.16. He did not pay by that date. Instead, on May 1, 2020, he called a Weltman representative, who told him that he now owed $4,306.29. Only after Chuluunbat later contacted his lawyer did he realize that the interest on the judgment was increasing daily.

Chuluunbat sued Weltman, alleging that it had violated the Fair Debt Collection Practices Act (FDCPA) by sending him a misleading letter. See 15 U.S.C. § 1692e(2), (10), § 1692f. He complained that Weltman (1) described the debt as an "account" even though it had been reduced to a judgment, (2) listed two different amounts as the "balance due," and (3) did not tell him that the debt was increasing daily. He did not specify how the allegedly misleading letter injured him, but he did assert that he "could not afford to pay" the settlement it offered.

After Weltman moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), the district court ordered the parties to submit simultaneous briefs on whether Chuluunbat had standing to sue in light of this court's recent decision in *Nettles v. Midland Funding LLC*, 983 F.3d 896, 900 (7th Cir. 2020). They did so, and Chuluunbat also moved for leave to amend his complaint, arguing that his proposed amended pleading established standing under *Nettles* and other recent cases decided after he filed

his initial complaint. His proposed amended complaint stated that he would have "pursued a different course of action" if he had known that the "account" Weltman was collecting was the judgment. He also alleged that if he had known that post-judgment interest was accruing, he would have "sought to resolve the alleged debt over other debts he had at the time" with lower interest rates. The proposed amended complaint does not state whether he could have paid off the debt or whether he was solvent.

The district court granted Chuluunbat's motion to amend his complaint but, in the same order, dismissed his case for lack of Article III standing. Relying on *Nettles*, the court ruled that Chuluunbat lacked a concrete injury because his amended complaint did not allege "that he had the *ability* to pay the debt owed, that he *actually paid* other debts instead, or that he took any *detrimental step* as a result of the alleged confusion." The court also reasoned that Chuluunbat must have known about the interest because the amount that the Weltman representative told him he owed had increased since the letter. The court dismissed the complaint without prejudice based on the lack of standing, entered judgment, and closed the case. Chuluunbat appealed.

## II

We briefly touch on two preliminary matters before turning to standing. First, although the district court dismissed the case without prejudice, its decision is final, and this court therefore has appellate jurisdiction under 28 U.S.C. § 1291. A dismissal for lack of Article III standing is necessarily without prejudice. See *White v. Illinois State Police*, 15 F.4th 801, 808 (7th Cir. 2021). It does, however, finally resolve Chuluunbat's right to proceed in *federal* court on these allegations. It is also noteworthy that, rather than permitting a second amended complaint, the district court noted "case terminated" on the docket and entered a separate Rule 58(a) judgment, signifying that it was done with the case. See FED. R. CIV. P. 58(a); *Hernandez v. Dart*, 814 F.3d 836, 840–41 (7th Cir. 2016). The decision is therefore final for purposes of appeal.

Second, the specific decision on appeal is the dismissal of the amended complaint, not the original complaint. Weltman contends that the proposed complaint is a nullity because Chuluunbat never separately filed it after the district court granted leave to amend. But that docketing nicety is not decisive. The district court assessed standing based on the amended complaint, which was before it as an exhibit to Chuluunbat's motion. Chuluunbat had no reason to docket it independently after the case was dismissed.

The issue on appeal is therefore whether the amended complaint sufficiently alleged Article III standing—a question we review *de novo*. See *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 278 (7th Cir. 2020). To establish standing, Chuluunbat had to

"clearly allege facts" showing that he (1) suffered a concrete and particularized injury (2) that is fairly traceable to the challenged conduct, and (3) likely to be redressed by a favorable judicial decision. See *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

A defendant may challenge standing in two ways at the pleading stage: through a facial attack contending that standing does not exist even if the allegations are true, or through a factual attack challenging the truth of the allegations pertinent to standing. *Bazile*, 983 F.3d at 279. In response to the latter, a plaintiff must offer proof of standing, see *Spuhler v. State Collection Serv., Inc.*, 983 F.3d 282, 285 (7th Cir. 2020), and the court may consider evidence outside the pleadings. See *Bazile*, 983 F.3d at 279.

A

Chuluunbat first defends the facial adequacy of his amended complaint. He points out that he alleged that he would have taken the settlement offer, which would have saved him thousands of dollars, had he known that his "balance" was a judgment that was increasing daily. Weltman's failure to follow the statute, he asserts, harmed him financially. He distinguishes his case from others in which a plaintiff alleged a violation of the FDCPA without detailing how the defendant's action caused harm. See, *e.g.*, *Nettles*, 983 F.3d at 899; *Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060, 1066 (7th Cir. 2020); *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 339 (7th Cir. 2019).

We agree with him that this described more than a bare procedural violation; Chuluunbat alleged dollars-and-cents harm resulting from the letter. That fact distinguishes this case from *Nettles*, upon which the district court relied, where the "complaint [did] not allege that the statutory violations harmed [the plaintiff] in any way." *Nettles*, 983 F.3d at 900. We have acknowledged that a debtor confused by a letter may be injured if the confusion causes her to prioritize another debt with a lower interest rate. See *Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067, 1068 (7th Cir. 2020). Here, Chuluunbat's increased debt is both concrete (it is a tangible harm) and particularized (it affects him in an individual way). See *Spokeo*, 578 U.S. at 339–40.

Chuluunbat further argues that the district court erred by insisting on affirmative allegations in the complaint addressing his ability to pay the settlement offer of $1,685 or any revision in his sequencing of payments prompted by the letter. He is correct, because general allegations in a complaint are presumed to embrace the specific facts necessary to support those allegations. See *Bazile*, 983 F.3d at 278. Chuluunbat's allegation that he would have prioritized paying the judgment over other debts supports the reasonable inference that he had the ability to pay the settlement and that he used his available funds on other debts. In a facial challenge to standing, we assume

the truth of the allegations in the complaint, and so no more was required of Chuluunbat until later stages of the proceeding. See *Spuhler*, 983 F.3d at 285.

Weltman responds that Chuluunbat's allegations are implausible because Chuluunbat must have known that its letter referred to the judgment: the letter listed the same credit card and reference numbers as the judgment. He also surely knew, Weltman urges, that the debt was accruing interest because the amount in the letter was greater than the judgment amount, and he was being charged (other) interest even before the judgment.

But Chuluunbat's allegations are not inherently implausible; they permit a reasonable inference that he did not understand the nature of the debt to which Weltman referred in its letter. See *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Chuluunbat might have understood the letter to be an attempt to satisfy the judgment, but it is at least plausible that he believed otherwise: the letter referred to a "balance," not a judgment, and requested payment of an amount different from the initial judgment amount. Chuluunbat also might have realized that interest was increasing his debt, but he might not have. He could see that he owed more than the initial judgment amount and that Weltman requested post-judgment interest in the state-court complaint, but if he did not understand that the letter was about the judgment at all, he may not have connected the dots the way Weltman thinks he should have. In other words, Weltman proposes other possibilities, but it does not establish that the allegations are implausible. (To be clear, however, we have no occasion to decide here whether the alleged withholding of information actually violated the FDCPA.)

Turning to the requirement of causation, Chuluunbat argues that his injury is fairly traceable to Weltman because he would have paid the settlement if Weltman had explained that the reduced amount would satisfy a judgment on which interest was increasing daily. He contests the district court's inference that he knew about the interest because a Weltman representative told him the amount owed had increased. The district court should have accepted Chuluunbat's contrary allegation in the amended complaint as true. The phone call to which Weltman refers took place on May 1, 2020, months after Weltman's letter, and so Chuluunbat was injured at least by the interest that accrued during the time between the letter and the call. And the interest is not the only injury: Chuluunbat also let the time-sensitive settlement offer of $1,685.16 lapse on April 30, 2020.

Weltman also contends that Chuluunbat's injury, if any, arises from his ignorance of statutory interest under state law. Because Chuluunbat did not know about the post-judgment interest before Weltman's letter, the letter could not have

caused him to prioritize other debts over the debt to Discover. But Weltman again asks too much of Chuluunbat, who needed to allege only a causal connection between his injury and Weltman's conduct, not that Weltman's action is the *only* cause. See *J.B. v. Woodard*, 997 F.3d 714, 720 (7th Cir. 2021). Chuluunbat adequately pleaded a causal connection. His decision to forgo settling is fairly traceable to Weltman's purportedly misleading letter because, regardless of whether Chuluunbat knew the relevant law, he says he would have accepted the offer if he had known it would satisfy the judgment and that interest would continue to accrue if he did not accept. In any event, even if Chuluunbat had known the law surrounding post-judgment interest, the letter still could have caused injury by leading him to believe that Weltman was collecting a separate debt—one that was not a judgment and thus not subject to post-judgment interest.

The third standing requirement, redressability, is not disputed. The district court could redress Chuluunbat's injury by awarding statutory or compensatory damages.

On its face, Chuluunbat's amended complaint thus alleged an injury in fact that is both fairly traceable to Weltman and redressable by a favorable judicial decision.

B

That brings us to Weltman's factual attack on Chuluunbat's standing. In its supplemental brief in the district court, Weltman argued that Chuluunbat could not have paid his debt to Discover over other debts because he was insolvent at all relevant times, as he represented in prior cases. See *Chuluunbat v. Portfolio Recovery Associates*, Case No. 19-cv-08291 (N.D. Ill. 2019); *Chuluunbat v. Cavalry Portfolio Services*, Case No. 20-cv-00164 (N.D. Ill. 2020). This raises a question of fact (whether Chuluunbat *could have* paid the settlement offer) underlying Chuluunbat's allegation of an injury (that he *would have* paid it but for the letter misleading him). If payment within a reasonable time was impossible for him, then nothing Weltman did could have injured him.

When the defendant challenges the truth of the facts underlying the plaintiff's allegations of standing, the district court must resolve any dispute before determining whether the plaintiff has standing. See *Bazile*, 983 F.3d at 281. Because the district court did not so here, Weltman asks this court to look to the evidence and determine that Chuluunbat lacked a concrete injury because he was not capable of paying the credit card debt regardless of whether the letter misled him. That is not the way we normally proceed, however; instead, we rely on the district court to make this type of factual finding in the first instance.

That, we believe, is the best approach here. Whether Chuluunbat would have been able to pay either the $1,685 or other, lower-interest, bills, is a question of fact. Although relevant, Chuluunbat's prior statements do not resolve whether he was insolvent at the moment when Weltman offered him the settlement. His complaints in the cases mentioned above include an allegation that he sent a letter in September 2019 informing a credit agency that it was reporting inaccurate information about him, and that letter stated that he was insolvent. But Chuluunbat had until April 30, 2020, to accept Weltman's settlement offer. He conceivably could have paid that settlement even if he was insolvent six months earlier, especially to settle a rapidly increasing debt. And Chuluunbat cannot be held to the allegation in his first complaint that he could not pay the settlement. Factual allegations that are not included in a later complaint cannot be considered on a motion to dismiss, even when the complaints contradict each other. *Scott v. Chuhak & Tecson, P.C.*, 725 F.3d 772, 782–83 (7th Cir. 2013).

Second, Chuluunbat had little opportunity to respond to the factual attack. Weltman first raised the issue in its brief on standing, which was filed simultaneously with Chuluunbat's brief. Weltman never filed a motion based on lack of standing, and so Chuluunbat had no reason to anticipate that Weltman would bring in evidence outside the pleadings to prove that he could not have paid the settlement. Although eventually Chuluunbat will need to show that payment was not impossible, see *Spuhler*, 983 F.3d at 285, he did not need to do that at this stage. In *Bazile*, we remanded for an evidentiary hearing in even when the plaintiff had an opportunity to respond to a factual attack on standing. The same approach is proper here. See *Bazile*, 983 F.3d at 279, 281–82 (defendant challenged facts necessary for standing in motion to dismiss).

To determine whether Chuluunbat has alleged an injury that confers standing, the district court must resolve whether he could have paid the settlement amount before the offer closed or successfully changed the order of other payments. We therefore VACATE and REMAND for further proceedings consistent with this order.